# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ANDREW P. MOORE, II, et al.
**PLAINTIFFS**

CASE NO. **3:09-cv-298-J-34TEM**

vs.

SHANDS JACKSONVILLE
MEDICAL CENTER, INC., et al.
**DEFENDANTS.**

Date: November 24, 2010

_____/

## PLAINTIFFS' EMERGENCY MOTION TO COMPEL AND FOR
## EXPENSES WITH SUPPORTING MEMORANDUM OF LAW, OR IN
## THE ALTERNATIVE - SANCTIONS IN THE FORM OF DEFAULT JUDGMENT

COMES NOW Plaintiffs Andrew P. Moore, II, Nathan Smalls, Jr., Beverly Williams, Julio Wilson, Joel Tappin, and Yolanda Emanuel (hereinafter "Plaintiffs"), and pursuant to the court's Local Rule 2.04(g), and Federal Rules of Civil Procedure 20(a), 26, and 37, join in filing this emergency motion to compel disclosures & documents, compel designation of representative, and for imposition of sanctions in the form of an entry of default and default judgment against Defendants Shands Jacksonville Medical Center, Inc. (Defendant Shands) and Lesli Ward (Defendant Ward), and as grounds therefor state:

### BACKGROUND

On September 4, 2010, Plaintiffs served on Defendant Shands, *Plaintiffs' Request For Production Of Documents And Things To Defendant Shands Jacksonville Medical Center, Inc.* (Exhibit A-1); on same date (Sept. 4, 2010), Plaintiff Moore requested Attorney Gary Wheeler to provide "the dates that the afore-identified Defendants and witnesses will be available in

November, 2010 for the taking of their depositions" and "that Defendant Shands designate a representative for itself" (Exhibit A). On October 7, 2010, Defendant Shands served on Plaintiffs, *Defendant Shands Jacksonville Medical Center, Inc.'s Objections And Responses To Plaintiffs' Request For Production Of Documents And Things* (Exhibit B). On September 7, 2010, Plaintiffs served on Defendant Ward, *Plaintiffs' Set Of Interrogatories To Defendant Lesli Ward* (Exhibit C); on October 11, 2010, Defendant Ward served on Plaintiffs, *Defendant Lesli Ward's Answers And Objections To Plaintiffs' Interrogatories* (Exhibit D).

Defendants Shands and Ward willfully failed to make disclosures and produce documents, made false, misleading, evasive and incomplete responses and unfounded objections to Plaintiffs' discovery requests, repeatedly read or interpreted Plaintiffs' discovery requests in a restrictive or hyper-technical manner to avoid disclosure, rigged or altered several CD recordings to make them inoperable with the intent to impair the CD's integrity or availability for use in these federal court proceedings, during discovery, and at trial, erased, deleted, and/or omitted dates and signatures from requested documents with the intent to impair the documents' integrity or availability for use in these federal court proceedings, during discovery, and at trial, refused upon request to provide dates that Defendants and witnesses would be available for the taking of their depositions, refused upon request to designate a representative(s) to testify on behalf of Defendant Shands for its scheduled deposition, caused Plaintiffs to incur undue cost & expenses, caused unnecessary delay in these litigations, and failed to cooperate in discovery in accordance to the Federal Rules of Civil Procedure and in compliance to the court's Case Management and Scheduling Order. Accordingly, Plaintiffs submit that Defendants Shands and Ward deliberately engaged in contumacious, mendacious, and bad faith conduct, and that their answers, responses, and objections, or the absence of same thereof, are substantially unjustified and insufficient.

Plaintiffs submit that their motion to compel and motion for sanctions are appropriate and should be granted for the following reasons: (a) the requested disclosures and documents would provide evidence that Defendants' proffered reasons for its adverse actions against Plaintiffs are pretextual; (b) the requested disclosures and documents are needed to identify, locate, and interview persons and potential witnesses who have information or knowledge of material facts that are relevant to issues in Plaintiffs Complaint; (c) the requested disclosures and documents are needed to identify specific comparisons, obtain statements and affidavits from persons and potential witnesses who have information and knowledge of material facts that are relevant to issues in Plaintiffs' Complaint, resolve disputed facts, and expedite the disposition of this case; (d) Plaintiffs have a substantial need for the requested disclosures and documents in preparation of their case in which such are in the possession and control of the Defendants, and Plaintiffs are unable without undue hardship to obtain the equivalent of the requested disclosures and documents by other means; (e) sanctions are appropriate and should be granted in light of Defendants' willful failure to provide requested disclosures and documents, their persistence in acting in bad faith, and their refusal to comply with the court's Case Management and Scheduling order and the provisions of the Federal Rules of Civil Procedures governing discovery; Defendants' responses to Plaintiffs' discovery requests were made for the improper purposes to conceal and/or alter information and documents, obstruct the due administration of justice, harass and annoy Plaintiffs, cause unnecessary delay, hamper Plaintiffs claims, prolong the proceedings, increase the cost of litigation for Plaintiffs, and prevent them from developing their claims during the discovery phase of these proceedings and in preparation for trial.

Plaintiffs' are filing this emergency motion to prevent further prejudice to their case and claims as a result of Defendants' contumacious bad faith conduct. Such deliberate bad faith

conduct has already severely prejudiced Plaintiffs' case and their claims as Defendants concealed and/or altered requested information and documents that Plaintiffs have a substantial need for and planned to use at the depositions of Defendants and witnesses that have been noticed. For example, Plaintiffs were unable to use the defective CD's and altered documents at Defendant Ward's deposition on November 15, 2010 and will be unable to use them at Defendant Greg Miller's deposition scheduled for November 29, 2010 because the CD's will not open, and information on certain documents requested was deleted and/or omitted. Plaintiffs certainly can't use the other requested information and documents they intended to use at the depositions because Defendants concealed them and refuse to submit them. Plaintiffs are hopeful the court will grant their motion to compel which will enable them to obtain the requested information and other deponents' depositions that are scheduled for December 6, 2010, December 7, 2010, December 8, 2010, December 10, 2010, and December 13, 2010. Hence time is of the essence.

What follows are *Defendant Lesli Ward's Answers And Objections To Plaintiffs' Interrogatories* (Exhibit D) in response to *Plaintiffs' Set Of Interrogatories To Defendant Lesli Ward* (Exhibit C). Plaintiffs assert that Defendant Ward's answers and responses are insufficient and that her objections are unfounded, which renders them also insufficient:

**Defendant's "General Objection:** Defendant objects to Plaintiffs' First Set of Interrogatories Addressed to Defendant to the extent that the Definitions and Instructions contained therein exceed the requirements of the Federal Rules of Civil Procedure."

"INTERROGATORY #1. Identify any and all persons who you intend to present as witnesses during these proceedings at deposition and or at trial in defense of this instant civil action."
Defendant's Response: "Defendant objects to this request based on the work product doctrine."

"INTERROGATORY #2. Identify any and all documents you intend to present during these proceedings at deposition and or at trial in your defense of this instant civil action."

Defendant's Response: "Defendant objects to this request based on the work product doctrine."

"INTERROGATORY #3. If you hired any persons whose race is White/Caucasian for the position of Security Officer at a higher pay rate than you were paying the Plaintiffs at such time you hired any such White/Caucasian persons, state the specific reason(s) why."

Defendant's Response: "I have not hired Security Officers."

"INTERROGATORY #4. Identify any and all persons whose race is White/Caucasian whom you hired for the position of Security Officer at a higher pay rate than you were paying the Plaintiffs at such time you hired any such White/Caucasian persons, and state the specific amount of starting pay rate that you paid any such White/Caucasian persons when you hired them."

Defendant's Response: "I have not hired Security Officers."

"INTERROGATORY #5. In reference to the preceding interrogatory, state the relevant job experience, qualifications, and education level that each White/Caucasian person had at the time you hired them."

Defendant's Response: "Not applicable."

"INTERROGATORY #6. State whether or not you considered the relevant job experience, qualifications, and education level of the Plaintiffs when you hired them, and if you did not, explain why."

Defendant's Response: "Not applicable."

"INTERROGATORY #7. Specifically describe the job experience, qualifications, and level of education that was required within the last five years for an applicant to get hired by you for the position, Security Officer."

Defendant's Response: "I have not hired Security Officers."

"INTERROGATORY #9. Identify the person or persons responsible for inserting data into Shands official website to reflect the pay/salary for the position, Security Officer, was $8.86 to $13.03 per hour in January, 2009, and state the reason why such person(s) inserted such data."

Defendant's Response: "As of January, 2009, Casey Sharp was responsible for inserting data into Shands official website to reflect the pay/salary for the position, Security Officer. I do not know whether the pay range of 8.66 to 13.03 per hour was inserted."

"INTERROGATORY #10. Identify all contracts in your possession or under your control within the last 10 years that you obtained from the United States Government, which require Affirmative Action Programs and Equal Employment Opportunity for women and minorities."

Defendant's Response: "Defendant Ward objects to this request as not relevant to any claim or defense in this action, not reasonably calculated to lead to the discovery of admissible evidence, and overly broad and unduly burdensome."

"INTERROGATORY #11. Identify any and all documents in your possession or under your control within the last 10 years that contain information regarding Affirmative Action Programs and Equal Employment Opportunity for minorities and women."

Defendant's Response: "Defendant Ward objects to this request as not relevant to any claim or defense in this action, not reasonably calculated to lead to the discovery of admissible evidence, and overly broad and unduly burdensome.

"INTERROGATORY #13. Identify any and all documents in your possession or under your control within the last 10 years that contain information about your policies regarding Equal Employment Opportunity/Affirmative Action Programs including any anti-discrimination programs, anti-retaliation programs, anti-harassment programs, and anti-sexual harassment programs."

Defendant's Response: "Defendant Ward objects to this request as not relevant to any claim or defense in this action, not reasonably calculated to lead to the discovery of admissible evidence, and overly broad and unduly burdensome. Subject to and without waiving these objections, please see documents produced by Defendant Shands Jacksonville Medical Center, Inc. in response to Request No. 10 of Plaintiffs' April 21, 2010, First Request For Production."

"INTERROGATORY #16. Identify all Shands job positions/vacancies that were posted on your bulletin board(s) from January, 2008 through August, 2008 and include the rate of pay/salary for each job position."

"Defendant's Response: Defendant Ward objects to this request as not relevant to any claim or defense in this action, not reasonably calculated to lead to the discovery of admissible evidence, and overly broad and unduly burdensome."

"INTERROGATORY #18. Describe the job description and job duties for the position, Shands Security Dispatcher."

Defendant's Response: "There is no position, "Shands Security Dispatcher."

"INTERROGATORY #19. Explain the reason(s) why testimony and evidence of unlawful discrimination against Plaintiff Emanuel was rejected at the appeals hearing of her discharge."

Defendant's Response: "I did not attend any such hearing."

"INTERROGATORY #21. Specifically explain why you suspended or terminated your internal grievance process, which prevented Plaintiff Moore to appeal his discharge."

Defendant's Response: "I did not suspend or terminate any internal grievance process."

"INTERROGATORY #22. In reference to your statement that the following individuals were involved in the termination of Plaintiff Moore's employment, specifically describe each individual's involvement, identify the date(s) that each individual was involved, and state whether Jim Burkhart and Gregory Miller were also involved and the extent of their involvement:

Lesli Ward, Dan Staifer, William Valree, Anthony Ross, Paul Reis, and Becky Nathanson."

Defendant's Response: "Paul Reis and William Valree met with Plaintiff Moore on Monday, November 30, 2009, to inform him that his employment with Shands Jacksonville was being terminated. Mr. Reis reviewed a corrective action form with Plaintiff Moore and both signed the form after Mr. Moore did. From approximately November 19, 2009, to November 28, 2009, I was involved in reviewing the documents obtained as a result of the investigation into Plaintiff Moore's conduct. I was also involved in discussing, in the presence of legal counsel, the appropriate response to Plaintiff Moore's conduct with Dan Staifer, William Valree, Anthony Ross, Paul Reis, and Becky Nathanson. Those communications are protected by the attorney-client privilege. Dan Staifer's, Willian Valree's, Anthony Ross', Paul Reis', and Becky Nathanson's involvement may be more extensive than what I have listed here. I do not know whether it was or was not. Jim Burkhart and Gregory Miller were not involved."

"INTERROGATORY #24. Specifically explain why you initially contested Plaintiff Moore's claim for unemployment benefits by reporting to the Florida Unemployment Compensation Appeals that Plaintiff Moore was discharged for insubordination and misconduct, and why you subsequently failed to appear at the scheduled Appeals Hearing and failed to present any evidence of insubordination

or misconduct ascribed to Plaintiff Moore which resulted in the Florida Unemployment Compensation Appeals rejecting your charges of insubordination and misconduct against Plaintiff Moore."

Defendant's Response: "Defendant Ward objects to this interrogatory as not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence."

What follows are *Defendant Shands Jacksonville Medical Center, Inc.'s Objections And Responses To Plaintiffs' Request For Production Of Documents And Things* (Exhibit B) in response to *Plaintiffs' Request For Production Of Documents And Things To Defendant Shands Jacksonville Medical Center, Inc.* (Exhibit A-1). Defendant Shands' answers and responses are insufficient and its objections are unfounded, which renders them also insufficient:

**Defendant's "General Objection: 1.** Defendant objects to Plaintiffs' Request for Production of Documents and Things to Defendant to the extent that it requires Defendant to provide any information other than what is required under Rule 34 of the Federal Rules of Civil Procedure.
2. Defendant objects Plaintiffs' Request for Production of Documents and Things to Defendant to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Any inadvertent disclosure by Defendant of any information protected by any privilege shall not constitute a waiver of that privilege.

**"Request #3.** Copy of all payroll records and documents containing the pay/salary rate of **all** (part-time and full-time) White/Caucasion Shands Security Officers hired by you within the last ten years (whether presently employed or separated) including Security Officers Shane Burleson, Steven Tompkins, Fred Styles, Brian Roberts, Daryl Parson, Joseph Arnold, and Chad Steward."

"Defendant's Response: Defendant objects to this request as overly broad, unduly burdensome, not relevant to any claim or defense in this matter, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, documents reflecting that hourly rates paid to Shane Burleson, Steven Tomkins, Fred Styles, Brian Roberts, Joseph Arnold, and Chad Stewart have previously been produced in response to request No. 2 from Plaintiffs' First Request for Production of Documents served on April 21, 2010."

**"Request #4.** Copy of payroll records of Security Officers Omar-Munoz Rosa and Jesus Alvarez."

"Defendant's Response: Defendant objects to this request as overly broad, unduly burdensome, not relevant to any claim or defense in this matter, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, documents reflecting that hourly rates paid to Omar-Munoz Rosa have previously been produced in response to Request No. 2 of Plaintiffs' First Request for Production of Documents served on April 21, 2010."

**"Request #5.** Copy of all contracts in your possession or under your control within the last 10 years that were entered between you and the United States Government including contracts requiring Affirmative Action Programs and Equal Employment Opportunity for women and minorities."

"Defendant's Response: Defendant objects to this request as overly broad, unduly burdensome, not relevant to any claim or defense in this matter, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, documents responsive to this request but limited to the past five (5) years have been previously produced in response to Request No. 14 of Plaintiffs' First Request for Production of Documents served on April 21, 2010."

**"Request #6.** Copy all Affirmative Action Programs in your possession or under your control within the last 10 years including those pertaining to Equal Employment Opportunity for minorities and women."

"Defendant's Response: Defendant objects to this request as duplicative of Request No. 15 from Plaintiffs' First Request for Production of Documents served on April 21, 2010. Defendant further objects to this request as not relevant to any claim or defense in this matter and not reasonably calculated to lead to the discovery of admissible evidence."

**"Request #7.** Copy of all documents in your possession or under your control within the last 10 years that contain information related to your policies regarding Equal Employment Opportunity programs, anti-discrimination programs, anti-retaliation programs, and anti-harassment programs."

Defendant's Response: "Defendant objects to this request as duplicative of Request No. 10(f) from Plaintiffs' First Request for Production of Documents served on April 21, 2010. Defendant further objects to the overly broad temporal scope of this request."

**"Request #8.** Copy of all documents received by you from the OFCCP (Office of Federal Contract Compliance Programs) as well as all documents that you provided to the OFCCP related to the OFCCP investigation of Plaintiffs' charges in the OFCCP Complaint, No. I00149932 and I00150019."

Defendant's Response: "Defendant objects to this request as seeking documents subject to the work product doctrine."

**"Request #9.** Copy of two letters containing Shands' Equal Employment Opportunity and Affirmative Action policies that are **signed and dated July 1, 2006 and January 1, 2009, respectively, by Defendant Jim Burkhart,** and that bear the following phrases in the caption of the letters: (emphasis added)

"TO: ALL EMPLOYEES AND JOB APPLICANTS
 FROM: Jim Burkhart, President/Administrator, Shands Jacksonville
 Re: EQUAL EMPLOYMENT OPPORTUNITY/AFFIRMATIVE ACTION POLICY"

Defendant's Response: "Documents responsive to this request have been previously produced in response to Request No. 14 of Plaintiffs' First Request for Production of Documents served on April 21, 2010."

**"Request #11.** Copy of all "Daily Rotation Schedules" assigning Plaintiffs Nathan Smalls, Jr., Beverly Williams, Andrew P. Moore, II, Joel Tappin, and Julio Wilson to work as security dispatchers."

Defendant's Response: "Defendant objects to this request as overly broad, unduly burdensome, not relevant to any claim or defense in this matter, and not reasonably calculated to lead to the discovery of admissible evidence."

**"Request #15.** Copy of all Shands job applications completed by all White applicants within the last five years for the position, security officer, including both part-time and full-time positions."

Defendant's Response: "Defendant objects to this request as overly broad, unduly burdensome, not relevant to any claim or defense in this matter, and not reasonably calculated to lead to the discovery of admissible evidence."

**"Request #16.** Copy of all documents relevant to your decision to take adverse actions against Plaintiffs Smalls, Williams, Emanuel, and Moore including all disciplinary "write-ups", suspensions, and discharges imposed against any of them, all documents presented or included in your internal grievance appeals process, and all written statements received from witnesses or others relevant to such adverse actions including written statements by former Security Officers Christopher Smith and Melvin Loyal."

Defendant's Response: "Defendant has produced documents responsive to this request in response to Request No. 8 from Plaintiffs' First Request for Production of Documents served on April 21, 2010."

**"Request #18.** Copy of the following video surveillance tape footage:

(a) July 13, 2008, from 8:30 a.m. to 10:30 a.m. at the Emergency Triage Post at the Clinical Center;

(b) September 27, 2008, from 8:00 a.m. to 9:30 a.m. at the C.O.U. Post in the Clinical Center;

(c) March 11, 2009, from 6:15 a.m. to 1:00 p.m. at the Emergency Triage Post at the Clinical Center;

(d) March 11, 2009, from 12:00 p.m. to 1:00 p.m. on 1st Floor lobby in front of main desk at Tower I;

(e) June 12, 2009, from 6:00 a.m. to 6:45 a.m. in the briefing room at the UDC Building;

(f) June 12, 2009, from 10:00 a.m. to 2:35 p.m. in the Security Dispatch Office at the Clinical Center;

(g) June 12, 2009, from 2:20 p.m. to 3:00 p.m. in Anthony Ross' office at the UDC Building;

(h) June 16, 2009, from 6:30 a.m. to 8:50 a.m. at the Emergency Triage Post at the Clinical Center;

(i) June 22, 2009, from 12:30 p.m. to 2:30 p.m. at the Emergency Triage Post at the Clinical Center;

(j) June 22, 2009, from 2:15 p.m. to 3:15 p.m. in Anthony Ross' office at the UDC Building.

(k) Copy of any surveillance tape that contains footage of Security Officer Shane Burleson reading a newspaper on his post at the Close Observation Unit (C.O.U.).

(l) Copy of any and all surveillance tape footage relevant to alleged actions of Plaintiff Emanuel at the C.O.U. (alleged eating, sleeping, and using a cell phone) for which you contend support the discharge of Plaintiff Emanuel on October 22, 2008.

(m) Copy of any and all surveillance tape footage relevant to alleged actions of Plaintiff Moore on November 18, 2009 at the C.O.U. (alleged failure to follow work instructions, discourteous, insubordination, …etc.) for which you contend support the suspension and discharge of Plaintiff Moore on November 21, 2009 and November 30, 2009, respectively."

Defendant's Response: "Defendant objects requests 18(a) through 18(k) as not relevant to any claim or defense in this action, and not reasonably calculated to

lead to the discovery of admissible evidence. Defendant has already provided copies of recording requests in Request 18(l) in response to Request No. from Plaintiffs' Amended and Supplemental Request to Produce. Additionally, Defendant has already provided a copy of the recording requested in Request 18(m) in response to Request No. 32 from Plaintiffs' First Request for Production of Documents served on April 21, 2010."

## MEMORANDUM OF LAW

Defendant Lesli Ward's *"General Objections"* to Plaintiffs' Interrogatories are insufficient. Interrogatories should state **specifically** the grounds for objection, and conclusory assertions like the general objection made by Defendant Ward in response to Plaintiffs' interrogatories are insufficient. *See Panola Land Buyers' Association v. Sherman*, 762 F.2d 1550 (11th Cir.1985). The same holds true for Defendant Shands' *"General Objections"*, and both general objections are unfounded because Plaintiffs' discovery requests do not "exceed requirements of the Federal Rules of Procedures" do not "require Defendant to provide any information other than what is required under FRCP 34" and do not "seek information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege."

Defendant's objections to Interrogatories #1 & #2 on grounds of work product doctrine are clearly unfounded, misleading, and evasive because the work product protection **applies only to documents and other "tangible things"**. *See In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997); it **does not apply** to facts known or gathered relating to the litigation, which generally are discoverable. *See Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 500 (N.D.Ill.2001). Furthermore, even if the work product consisted of documents, it would still be discoverable because Plaintiffs have a substantial need for the it and an inability to otherwise obtain it the without undue hardship Work product is discoverable where a party has a substantial need for the materials and an inability to otherwise obtain the materials without undue hardship. *See* FRCP 26(b)(3); *PepsiCo, Inc. v. Baird, Kurtz & Dobson L.L.P.*, 305 F3d 813, 817 (8th Cir.2002).

Defendant's responses to Interrogatories #3, #4, #5, #6, #7, #9, #19, and #21, respectively ("I have not hired Security Officers.", "Not applicable.", "I do not know whether the pay range of 8.66 to 13.03 per hour was inserted.", "I did not attend any such hearing.", "I did not suspend or terminate any internal grievance process.") are evasive, incomplete, and misleading. Defendant Ward deliberately and intentionally read Plaintiffs' interrogatories in an artificially or hyper-technical manner to avoid disclosure of the requested information. Interrogatories and requests for documents should not be read or interpreted in an artificially or hyper-technical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions. For interrogatory purposes, Defendant Ward evidently acted in the capacity of the designated agent of Defendant Shands as she answered the interrogatories that were served on Defendant Shands by the Plaintiffs; she served her answers on June 7, 2010 and entitled them, *Defendant Shands Jacksonville Medical Center, Inc.'s Answers And Objections To Plaintiff Andrew Moore's First Set Of Interrogatories Addressed To Defendant, Defendant Shands Jacksonville Medical Center, Inc.'s Answers And Objections To Plaintiff Emanuel's First Set Of Interrogatories Addressed To Defendant*, and *Defendant Shands Jacksonville Medical Center, Inc.'s Answers And Objections To Plaintiffs Nathan Smalls; Julio Wilson, Beverly Williams' And Joel Tappin's First Set Of Interrogatories Addressed To Defendant.*

Defendant Ward admitted under oath during her deposition on November 15, 2010, that she selected to answer the interrogatories in *Plaintiffs' Set Of Interrogatories To Defendant Lesli Ward* (Exhibit C) in both her individual capacity and her capacity as a representative of Defendant Shands – depending on the question in the interrogatory. She did this deceitfully with her full knowledge that the interrogatories instructions clearly indicated that the word **"you"** in the Interrogatories referred to her "acting in her official or corporate capacity as an agent or repre-

sentative of Shands Jacksonville Medical Center, Inc" – not in her individual capacity in which she selectively & evasively chose to respond to these interrogatories to avoid disclosure.

Defendant's objections to Interrogatories #10, #11, #13, #16, and #24 on grounds that they are "not relevant to any claim or defense", "not reasonably calculated to lead to the discovery of admissible evidence", and "overly broad and unduly burdensome" are clearly unfounded, evasive, and conclusory assertions. Objections to interrogatories must state specifically the grounds for objection; conclusory assertions that the requests are too long, irrelevant, unreasonable, or too expensive are insufficient. *See Panola Land Buyers' Association v. Sherman*, 762 F.2d 1550 (11th Cir.1985). Further, Plaintiffs' discovery requests are in fact reasonably calculated to lead to the discovery of admissible evidence albeit discovery information need not be admissible at trial. *See Coughlin v. Lee*, 946 F.2d 1152 (5th Cir.1991). Inadmissibility is not grounds for objection to discovery. *See* FRCP 26(b)(1). The following added answer by Defendant to Interrogatory #13 is evasive and incomplete as Defendant did not provide any information nor produce any copy of any anti-retaliation program as requested. Such requested information is relevant to Plaintiffs' retaliation claim for which they are legally entitled to.

> "Subject to and without waiving these objections, please see documents produced by Defendant Shands Jacksonville Medical Center, Inc. in response to Request No. 10 of Plaintiffs' April 21, 2010, First Request For Production."

The following portion of Defendant's answer to Interrogatory #23 is evasive and incomplete, and no attorney-privilege exists in regard to the requested information:

> "I was also involved in discussing, in the presence of legal counsel, the appropriate response to Plaintiff Moore's conduct with Dan Staifer, William Valree, Anthony Ross, Paul Reis, and Becky Nathanson. Those communications are protected by the attorney-client privilege. Dan Staifer's, Willian Valree's, Anthony Ross', Paul Reis', and Becky Nathanson's involvement may be more extensive than what I have listed here. I do not know whether it was or was not. Jim Burkhart and Gregory Miller were not involved."

Such answer is evasive and incomplete, and therefore insufficient because Defendant failed to expressly invoke any attorney-client privilege and failed to describe the nature of communications not disclosed in a manner that would enable Plaintiffs to assess the applicability of any privilege or protection. Federal Rule of Civil Procedure 26(b)(5) clearly states:

> "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection"

As the United States Supreme Court held, privilege is intended to be a shield, not a bludgeon. There is no privilege not to disclose merely because a party (Defendant Ward in this instant case) desires to keep it confidential. *See e.g.*, *Bransburg v. Hayes*, 408 U.S. 665 (1972). In responding to Interrogatory #23, Defendant Ward also once again evasively and selectively *"switched"* from her capacity as a representative agent of Defendant Shands to her personal and individual capacity to avoid disclosure of the requested information.

Defendant's objections to Document Requests #3, #4, #5, #6, #11, #15, and #18 (on grounds that they are "overly broad, "unduly burdensome", "not relevant to any claim or defense in this matter", "action", "not reasonably calculated to lead to the discovery of admissible evidence", and "Defendant further objects to the overly broad temporal scope of this request") are unfounded, evasive, and conclusory assertions. Objections to discovery requests must state specifically the grounds for objection; conclusory assertions that the requests are too long, irrelevant, unreasonable, or too expensive are insufficient. *See Panola Land Buyers' Association v. Sherman*, 762 F.2d 1550 (11th Cir.1985). Further, Plaintiffs' discovery requests are in fact reasonably calculated to lead to the discovery of admissible evidence albeit discovery informa-

tion need not be admissible at trial. *See Coughlin v. Lee*, 946 F.2d 1152 (5th Cir.1991). Inadmissibility is not grounds for objection to discovery. *See* FRCP 26(b)(1).

Defendant's refusal to produce a copy of payroll records of Security Officer Jesus Alvarez as requested in Plaintiffs' Document Request #4, is unjustified. The following portion of Defendant's answer to Plaintiffs' Document Response #5 is false, evasive, and misleading:

> "Subject to and without waiving this objection, documents responsive to this request but limited to the past five (5) years have been previously produced in response to Request No. 14 of Plaintiffs' First Request for Production of Documents served on April 21, 2010."

Instead of producing a copy of U.S. Government contracts in its possession requiring Affirmative Action Programs and Equal Employment Opportunity **for women and minorities** as requested, Defendant concealed the contracts and instead produced its *"Affirmative Action Plan For Veterans And Individuals With Disabilities"* (Exhibit E). Defendant's unfounded objection to Document Request #6 ("Defendant objects to this request as duplicative of Request No. 15 from Plaintiffs' First Request for Production of Documents served on April 21, 2010") is evasive & misleading as Defendant concealed and did not produce the requested documents. Defendant Ward acknowledged under oath at her deposition that Defendant Shands has an Affirmative Action Program pertaining to Equal Employment Opportunity for minorities and women.

The following added answer by Defendant to Document Request #7 is evasive as Defendant did not produce a copy of any anti-retaliation program as requested:

> "Defendant objects to this request as duplicative of Request No. 10(f) from Plaintiffs' First Request for Production of Documents served on April 21, 2010."

Defendant's objection to Document Request #8 on grounds of work product doctrine is unfounded because Plaintiffs have a substantial need for the materials and an inability to otherwise obtain them without undue hardship. Work product is discoverable where a party has a

substantial need for the materials and an inability to otherwise obtain the materials without undue hardship. *See* FRCP 26(b)(3); *PepsiCo, Inc. v. Baird, Kurtz & Dobson L.L.P.*, 305 F3d 813, 817 (8th Cir.2002). Furthermore, Defendant's objection is conclusory and Defendant failed to describe the nature of the documents not produced in a manner that would enable Plaintiffs to assess the applicability of any protection. *See* Federal Rule of Civil Procedure 26(b)(5) *See also Panola Land Buyers' Association v. Sherman*, 762 F.2d 1550 (11th Cir.1985).

Defendant's response to Document Request #9 is false, evasive, and misleading. Instead of producing the requested copy of two letters **"signed and dated July 1, 2006 and January 1, 2009, respectively, by Defendant Jim Burkhart,"** Defendant produced an altered copy of one of the letters and committed a criminal act where the dates and the signature of Jim Burkhart were deleted or omitted from the letter. (emphasis added) *See* Plaintiffs' Exhibit E (the page preceding the last page and marked by Defendant - "Exhibit B", bates stamped "00911").

Defendant's response to Document Request #16 is false, evasive, and misleading as Defendant concealed and failed to produce the requested documents: "**all** written statements received from witnesses or others relevant to such adverse actions **including written statements by former Security Officers Christopher Smith and Melvin Loyal."** (emphasis supplied)

The following responses by Defendant to Document Request #18(l) and (m) are evasive and misleading insofar as Defendant served defective copies of CD recordings of surveillance tape footage requested by Plaintiffs; it appears that the CD's were altered or "rigged", and they will not open nor play on any DVD or CD players that Plaintiffs used to try to play them:

> "Defendant has already provided copies of recording requests in Request 18(l) in response to Request No. from Plaintiffs' Amended and Supplemental Request to Produce. Additionally, Defendant has already provided a copy of the recording requested in Request 18(m) in response to Request No. 32 from Plaintiffs' First Request for Production of Documents served on April 21, 2010."

Plaintiffs are entitled to the materials requested in Document Requests #18(a) through and including #18(m), which are directly related to their claims and will in fact lead to admissible evidence. Defendant has not produced but is concealing all of the operational and playable CD recordings that contain surveillance tape footage requested by the Plaintiffs.

The court must require that the party failing to cooperate in discovery pay the resulting expenses of the other party. _See Hyde & Drath v. Baker_, 24 F.3d 1162 (9th Cir.1994). The court must award such expenses unless the failure to cooperate was "substantially justified". _See Telluride Management Solutions, Inc. v. Telluride Investment Group_, 55 F.3d 463 (9th Cir.1995). Corporations may be compelled to designate a representative to testify on its behalf at it deposition. _See Atlantic Cape Fisheries v. Hartford Fire Ins. Co._, 509 F.2d 577, 579 (1st Cir.1975). If a party refuses to designate a representative, the discovering party may move for an order compelling a designation. _Cates v. LTV Aerospace Corp._, 480 F.2d 620, 624 (5th Cir.1973).

Pursuant to FRCP 37(a)(3), an evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond. _See Beard v. Braunstein_, 914 F.2d 434, 446 (3rd Cir.1990). Rule 26(g) of the Federal Rules of Civil Procedure makes the imposition of sanctions mandatory when discovery is interposed for an improper purpose, and authorizes the court to impose sanctions on parties and attorneys making an unfounded objection to an interrogatory. Under the court's Local Rule 2.04(g), parties are required to conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay. The court should enter a default judgment against Defendants Ward, Shands, and their attorneys for their failure to cooperate in discovery and their contumacious and mendacious conduct during the discovery phase of these proceedings. An entry of default judgment against Defendants is an appropriate sanction for their willful failure to respond to interrogatories appropriately and

produce certain documents. *See Buchanan v. Bowman*, 820 F.2d 359 (11th Cir.1987). *See Downs v. Westphal*, 78 F.3d 1252 (7th Cir.1996), *Stookey v. Teller Training Distributors, Inc.*, 9 F.3d 631 (7th Cir.1993), and *Malautea v. Suzuki Motor Co., LTD.*, 987 F.2d 1536 (11th Cir.1993).

## CERTIFICATE OF CONFERENCE

In compliance to the Court's Local Rule 3.01(g), this is to certify that Plaintiff Moore conferred with counsel for Defendants, Attorney Gary Wheeler in good faith on or about October 27, 2010, October 29, 2010, and November 17, 2010. In a further good faith effort, Plaintiffs sent Mr. Wheeler a letter dated November 14, 2010, which specifically outlined the insufficiency of Defendants' discovery responses (Exhibit F). On November 17, 2010, Mr. Wheeler indicated to Plaintiff Moore that Defendants will not provide the requested discovery information and documents and that Defendant Ward would not be produced for the continuation of her deposition. Mr. Wheeler sent Plaintiffs a letter dated November 18, 2010 complaining about the length of Plaintiffs' November 14, 2010 letter and advised that he would send a "responsive letter" by Wednesday, November 24, 2010. (Exhibit G). Plaintiffs sent Mr. Wheeler a letter dated November 19, 2010 with deposition notices attached to same. In their letter, Plaintiffs advised Mr. Wheeler that since he already indicated that Defendants would not provide the information and documents requested by the Plaintiffs, that they had no reasonable alternative but to seek court intervention and file a motion to compel and for sanctions to obtain them. (Exhibit H).

Wherefore, based on the foregoing, Plaintiffs respectfully move for an Order compelling the requested disclosures & documents, compelling Defendant Shands to designate a representative to testify at its deposition, an award of compensation for expenses incurred by Plaintiffs, and alternatively, imposition of Sanctions in the form of Default Judgment against Defendants.

Respectfully Submitted,

Andrew P. Moore, II, *Pro Se*  Plaintiff
702 Meadowbrook Dr., Apt. 10, Orange Park, FL. 32073; Tele No. (904) 418-0663

Nathan Smalls, Jr., *Pro Se*  Plaintiff
3671 Kirkpatrick Circle, Unit #7, Jacksonville, FL. 32210; Tele No. (904) 910-4595

Beverly Williams, *Pro Se*  Plaintiff
5814 Legrande St., West, Jacksonville, FL. 32244; Tele No. (904) 772-8904

Joel Tappin, *Pro Se*  Plaintiff
7225 Karenita Drive, Jacksonville, FL. 32210; Tele No. (904) 707-7568

Julio Wilson, *Pro Se*  Plaintiff
517 Portobello Drive, Jacksonville, FL. 32221; Tele No. (904) 695-0103

Yolanda Emanuel, *Pro Se* Plaintiff
1620 Bartram Road, Apt 3201, Jacksonville, FL. 32207; Tele No. (904) 517-4504

## CERTIFICATE OF SERVICE

This is to certify that a copy of the appended Motion To Compel with attachments was sent by regular mail on *NOVEMBER 26, 2010* unless otherwise indicated below to:

Constangy, Brooks & Smith, LLP
200 West Forsyth Street, Suite 1700
Post Office Box 41009
Jacksonville, Florida 32202

Signed:

Andrew P. Moore, Jr. *Pro Se* Plaintiff
702 Meadowbrook Dr., Apt. 10
Orange Park, FL. 32073
Tele No. (904) 418-0663