**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDREW P. MOORE, II,
*et al*.,

Plaintiffs,

vs. CASE NO. 3:09-cv-298-J-34TEM

SHANDS JACKSONVILLE
MEDICAL CENTER, INC., *etc*.,
*et al*.,

Defendants.

---

**O R D E R**

This matter is before the Court on Plaintiffs' emergency motion to compel discovery responses (Doc. #125, Motion), filed November 26, 2010. Upon review of the Motion, the Court determined a shortened response period was in order. Consequently, the Court directed Defendant Shands Jacksonville Medical Center, Inc. ("Defendant Shands") and Defendant Lesli Ward ("Defendant Ward") to file responses on an expedited basis. Such responses were file on December 2, 2010 (Doc. #128; Doc. #129). For the reasons stated herein, the Motion (Doc. #125), as it relates to Defendant Shands, will be granted in part and denied in part.[1]

This action involves a civil rights complaint brought by Plaintiffs arising out of, *inter alia*, alleged unlawful race and sex-based employment discrimination (*see* Doc. #57, Revised Third Verified Amended Complaint). Plaintiffs are proceeding *pro se*.

---

[1]A separate Order on the Motion, as it related to Defendant Ward, was entered on December 3, 2010 (Doc. #130).

In the Motion, Plaintiffs move the Court to compel Defendant Shands to respond to portions of a request for production of documents and things that was served upon Defendant Shands on September 7, 2010 (Doc. #125 at 8). Plaintiffs maintain some of the responses to the requests are either incomplete or that the objections raised are unfounded (Doc. #125 at 8-19).

The Court will address each of the requests in turn.

Regarding Requests #3 and #4, Defendant Shands shall, to the extent such documents have not already been provided, produce a copy of all payroll records and documents containing the pay/salary rate of all (part-time and full-time) white Shands security officers hired by Defendant Shands within the past five (5) years (whether presently employed or separated).[2]

As noted by the court in *Barfoot v. Boeing Co.*, a case which the Court finds persuasive,

> on his [the plaintiff's] claim of disparate treatment, he is entitled to see the personnel records of the white employees who are alleged to have received preferential treatment on the basis of race, as well as the personnel records of the black and Native American employees who are alleged to have received disfavored treatment. Only by reviewing those records, in the exclusive possession of the defendant, can the plaintiff make a determination that either his claims are meritless and should be dismissed, or that they are supported by the defendant's records. Discovery of those records may also lead to the discovery of testimonial evidence.

184 F.R.D. 642, 643 (N.D. Ala. 1999).

With respect to the request for such records as to white employees that are not named in the complaint, the Court finds such records would nevertheless be relevant since

---

[2]Defendant Shands maintains it is unable to find responsive documents as to Daryl Parson (Doc. #129 at 4 n.2). In lieu of documentation, Defendant Shands may provide an affidavit as to the pay/salary rate of Mr. Parson during the relevant time period.

"[background evidence with proper foundation concerning an employer's general practices may be relevant to help a jury determine whether any proffered explanation is more likely true or pretextual." *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 793 (8th Cir. 2009). Of course, if Defendant Shands considers any such records to be privileged or completely irrelevant, then it may request an *in camera* inspection. This same rational applies to Request #4, which seeks payroll records for security officers Omar-Munoz Rosa and Jesus Alverez. Thus, Defendant Shands shall produce documents responsive to Request #4 as such information could be relevant to show a pattern of discrimination.[3]

Concerning Requests #5, #6, and #7, the Court finds the temporal aspect of the requests to be too expansive. To illustrate, Plaintiffs' Revised Third Verified Amended Complaint asserts claims that are alleged to have occurred from September 2007 and beyond (*see* Doc. #57). Therefore, requests for production of such a broad range of documents (*i.e.,* dating back to 2000) is simply too expansive in scope to be reasonably calculated to lead to admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). The Court finds the production of documents dating back five (5) years to be sufficient.[4]

Plaintiffs additionally argue that Defendant Shands has not produced "Affirmative Action Programs and Equal Opportunity for women and minorities" (Doc. #125 at 16). The record, however, reflects that some documents responsive to this request have been produced. Specifically, the record contains, among other documents, Defendant Shands': (1) Affirmative Action Program; (2) Equal Employment Opportunity and Affirmative Action

---

[3]Defendant Shands maintains it has already produced responsive documents with respect to Omar-Munoz Rosa (Doc. #129 at 5).

[4]Defendant Shands claims that documents responsive to Plaintiffs' requests (from within the past five (5) years) have already been produced (Doc. #129 at 6).

Policy; (2) Harassment, Sexual Misconduct and Inappropriate Workplace Conduct (*see e.g.*, Doc. #125-2 at 51-56; Doc. #128-5 at 2-5). Defendant Shands, however, maintains that certain Affirmative Action plans have not been produced because those plans contain proprietary and confidential information (Doc. #129 at 7-8). The Court finds such documents to be relevant to Plaintiffs' claims; therefore, the Court shall order such documents be produced pursuant to a Court approved protective order. In accordance therewith, Defendant Shands shall be afforded until December 22, 2010 within which to submit, for the Court's review, a proposed protective order. Defendant Shands will also be required to produce any anti-retaliation programs in place for the past five (5) years. Such documents, however, may be produced pursuant to the Court approved protective order, *supra*.

Request #8 seeks a "[c]opy of all documents received by you [Defendant Shands] from the OFCCP (Office of Federal Contract Compliance Programs) as well as all documents that you provided to the OFCCP related to the OFCCP investigation of Plaintiffs' charges in the OFCCP Complaint, No. 100149932 and 100150019." (Doc. #125 at 9). Defendant Shands wholly objects to the production of these materials pursuant to the work product doctrine (*see* Doc. #129 at 8-10). In support of its blanket objection, Defendant Shands maintains that "42 U.S.C. § 2000e-5(b) provides: 'Nothing said or done during and as part of such informal [OFCCP] endeavors may be **made public** by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.'" (Doc. #129 at 9) (*emphasis added*).

While it is true that information related to either an Equal Employment Opportunity Commission ("EEOC") investigation or an OFCCP investigation may not be made public,

the Supreme Court has held that, with respect to 42 U.S.C. § 2000e-5(b), "Congress did not include **charging parties** within the 'public' to whom disclosure of confidential information is illegal under the provisions of Title VII." *EEOC v. Associated Dry Goods Corp*., 449 U.S. 590, 598 (1981) (*emphasis added*).

Defendant Shands additionally asserts that "materials created for the purposes of conciliation constitute work product, even if not communicated to the other party." (Doc. #129 at 9). While information regarding conciliation discussions are not discoverable unless both the agency and the interested party consent to its release, information related to the factual aspects of an investigation into a plaintiff's charge of discrimination are discoverable. *See* 42 U.S.C. § 2000e-5(b); *Associated Dry Goods Corp*., 449 U.S. at 601-04; *EEOC v. Olsten Staffing Serv's Corp.*, 627 F. Supp. 2d 972, 975-76 (W.D. Wis. June 18, 2009).[5] Therefore, Defendant Shands shall respond to Request #8 by providing information related to the factual aspects of the OFCCP investigation into Plaintiffs' charges of discrimination.[6] Regarding any responsive documents that Defendant Shands maintains are protected by the work product doctrine (or any other privilege), Defendant Shands may request an *in camera* inspection of such materials.

"The work product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *EEOC v. WRS Infrastructure and Environment, Inc.*, No. 09 C 4272, 2010 WL 2604747, *2 (N.D. Ill. June 23, 2010) (*internal quotations and citations omitted*). Since blanket assertions of privileges

[5]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

[6]Plaintiffs may additionally seek to obtain this information directly from the OFCCP.

are usually insufficient, any claim of attorney work product privilege "must be considered on a document-by-document basis." *Id*. at *3; *see also Wells v. XPEDX*, No. 8:05-CV-2193-T-EAJ, 2007 WL 1200955, *4 (M.D. Fla. Apr. 23, 2007). Although the district court in *Barfoot*, *supra*, rejected the employer's blanket assertion of privilege, "it recognized that some materials produced in an internal investigation would be protected, including those that embody the advice, consent, or directions of counsel, and those that were generated in anticipation of litigation." *Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154, *5 (W.D. Wash. Nov. 20, 2007); *see also Barfoot*, 184 F.R.D. at 645.

With respect to Request #9, the Court will grant Plaintiffs' request to the extent that Defendant Shands shall, if such documents exist, produce true and correct copies of the same in signed and dated form.

As to Request #11, the Court finds it to be overly broad as to the time-frame requested but not to the content. As such, Defendant Shands shall produce "Daily Rotation Schedules," including those of Plaintiff Beverly Williams, form the time period from November 2008 through June 2009.[7] Even though Defendant Shands represents that Plaintiff Beverly Williams does not alleged that she was assigned undesirable dispatch duties, the Court nevertheless finds her Daily Rotation Schedules could be relevant for comparison purposes. In addition, the Court finds Daily Rotation Schedules for the four (4) month period preceding the time period at issue may also be relevant for comparison purposes.

[7] In the complaint, it is alleged that undesirable dispatch duties were assigned from February 2009 through June 2009 (*see* Doc. #57 at 10).

Regarding Plaintiffs' Request #15, the Court finds requesting all job applications, whether such individuals were ultimately hired or not, to be too broad. To illustrate, Plaintiffs desire a "[c]opy of all Shands job applications completed by all white applicants within the last five years for the position, security officer, including both part-time and full-time positions" (Doc. #125 at 10). Defendant Shands responds by noting that the request is overly broad and unduly burdensome (Doc. #129 at 12). The Court agrees with Defendant Shands to the extent that it shall only be required to produce job applications of all white security officers **hired** by Defendant Shands (as either full-time or part-time employees) for the preceding five (5) years.

Concerning Request #16, Defendant Shands shall produce, to the extent it has not already done so, any written statements by former security officers Christopher Smith and Melvin Loyal that are responsive to the request. If Defendant Shands considers any such documents to be privileged or completely irrelevant, then it may request an *in camera* inspection of the same.

Request #18 concerns Plaintiffs' request for copies of various video surveillance footage (Doc. #125 at 10-11). Plaintiffs apparently received Digital Video Disks ("DVDs") containing video surveillance footage responsive to a portion of their requests (*see* Doc. #129 at 13-15). Plaintiffs, however, were unable to view such DVDs because an "Intellex Player" is required to view the disks (Doc. #129 at 14). Although Plaintiffs maintain the DVDs were "rigged" or otherwise made inoperable, Defendant Shands maintains that the Intellex Player required to view the DVDs in question is used by its counsel and the employees of Defendant Shands (Doc. #129 at 14). Defendant Shands states that it has done nothing to prevent Plaintiffs from viewing the recordings and that, upon learning

Plaintiffs were unable to view the subject DVDs, advised Plaintiffs by letter that it is possible to download a version of said software over the internet (Doc. #129 at 14; *see also* Doc. #129-7). Plaintiffs responded by stating that they were insulted and that downloading the subject software is "not feasible" for them, and that it would cause them "undue hardship and burden" to attempt to download the same (Doc. #129-8 at 3; *see also* Doc. #129-8 at 3).

Rule 34 of the Federal Rules of Civil Procedure governs the production of electronically stored information. Pursuant to said Rule, a party may specify the form in which electronically stored information is to be produced. Fed. R. Civ. P. 34(b)(1)(C). The party to whom the request is directed must respond in writing within 30 days after being served. Fed. R. Civ. P. 34(b)(2)(A). In the response, the responding party may state an objection to a requested form for producing electronically stored information. Fed. R. Civ. P. 34(b)(2)(D). If the responding party objects to a requested form, or if no form was specified in the request (as is the case here), the responding party must state in the response the form or forms it intends to use. Fed. R. Civ. P. 34(b)(2)(D).

The advisory committee notes to Rule 34 provide that, if the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer pursuant to Rule 37(a)(1) in an effort to resolve the matter before the requesting party can file a motion to compel. Fed. R. Civ. P. 34 advisory committee's note. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), "runs a risk that the requesting party can show that the produced

form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form." Fed. R. Civ. P. 34 advisory committee's note.

> If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party 'translate' information it produces into a 'reasonably usable' form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information.

Fed. R. Civ. P. 34 advisory committee's note.

Here, it appears Plaintiffs did not specify the form in which they desired the subject video surveillance footage to be produced (*see* Doc. #125 at 10-11). It also appears that Defendant Shands did not respond in writing by stating in what form such footage would be produced. Defendant Shands apparently produced the subject video footage in a form it believed was "reasonably usable." Defendant Shands also offered to provide some reasonable amount of technical support (*see* Doc. #129-7).

The Intellex Player at issue is apparently available for free over the internet.[8] Defendant Shands advised Plaintiffs that, if they had trouble downloading the subject software, to contact them (Doc. #129-7). Plaintiffs responded that they were insulted and that downloading the software was not feasible for them (Doc. #129-8). The Court is not sympathetic to Plaintiffs' contention in this regard as it appears Plaintiffs did not attempt to confer in good faith to resolve the video footage issue before applying to the Court for relief. As such, the Court finds Defendant Shands has provided the subject video footage in a

---

[8] *See e.g.,* http://software.informer.com/getfree-intellex-player-download (last visited Dec. 10, 2010). It should be noted that the judiciary does not exercise responsibility over the content or current viability of the URL provided.

reasonably usable form.

With respect to responsive surveillance footage not provided to Plaintiffs, the Court would note that, in its response, Defendant Shands offers no explanation as to why it believes such footage is completely irrelevant (*see* Doc. #129 at 13-15). Consequently, Defendant Shands may either produce such materials to Plaintiffs or it may request an *in camera* inspection of the same.

Based on the foregoing, it is hereby **ORDERED**:

1. Plaintiffs' emergency motion to compel discovery responses (Doc. #125), as it relates to Defendant Shands, is **GRANTED in part and DENIED in part**.

2. Responses, as provided for herein, shall be provided to Plaintiffs soon as practicable but not later than **December 29, 2010**.

3. Defendant Shands shall provided the Court with a proposed protective order related to its proprietary and confidential Affirmative Action program(s) by no later than **December 22, 2010**.

4. Any request for the Court to review materials *in camera* shall be filed by **December 22, 2010**.

5. The Motion (Doc. #125) is **otherwise DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of December, 2010.

Thomas E. Morris
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties